[Cite as *State v. Moore*, 2011-Ohio-2934.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No.   96122

## STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

## AKRAM MOORE

### DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-535121

**BEFORE:**   Boyle, P.J., Cooney, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   June 16, 2011

**ATTORNEY FOR APPELLANT**

Elizabeth A. Thomarios
50 Baker Boulevard
Suite 6
Akron, Ohio   44333


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Mary McGrath
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


MARY J. BOYLE, P.J.:

{¶ 1}   This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.

{¶ 2}   Defendant-appellant, Akram Moore, appeals the sentence he received for his kidnapping and gross sexual imposition convictions.   He raises two assignments of error for our review:

{¶ 3} "[1.] The trial court committed plain error by sentencing appellant to consecutive sentences on the kidnapping and gross sexual imposition charges as they were allied offenses.

{¶ 4} "[2.] Appellant's sentence is contrary to law and the overriding purpose of felony sentencing."

{¶ 5} Finding no merit to his appeal, we affirm.

## Procedural History

{¶ 6} In March 2010, the grand jury indicted Moore on one count of kidnapping, in violation of R.C. 2905.01(A)(4), with a sexual motivation specification, and four counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1).

{¶ 7} Moore pleaded guilty to the indictment as charged, with the exception of the sexual motivation specification, which the state deleted from the indictment.

{¶ 8} The trial court sentenced Moore to an aggregate term of six and one-half years in prison, including five years for kidnapping and 18 months for each of the gross sexual imposition charges, which were to be served concurrent to one another, but consecutive to the kidnapping term. The trial court also notified Moore that he would be subject to five years of postrelease control upon his release from prison and be labeled a Tier II sex offender.

## Allied Offenses

{¶ 9}  In his first assignment of error, Moore argues that the trial court erred when it sentenced him on both the kidnapping and gross sexual imposition convictions because he claims that they were allied offenses.

{¶ 10} We normally review the issue of whether two offenses are allied under a de novo standard of review.  See *State v. Young*, 2d Dist. No. 23438, 2010-Ohio-5157.  Here, however, Moore failed to object to the trial court's sentencing him on both offenses.  We therefore review it under the plain error standard.  But our review is essentially the same because "imposition of multiple sentences for allied offenses of similar import is plain error." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶31.

{¶ 11} "The double jeopardy clauses of both the United States and Ohio Constitutions protect 'an individual against successive punishments as well as successive prosecutions for the same offense.'  *State v. Moore* (1996), 110 Ohio App.3d 649, 652, 675 N.E.2d 13 (citations omitted).  'Ohio's allied offenses statute, R.C. 2941.25, protects against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions.'  Id. at 653, 675 N.E.2d 13." *State v. Lowery*, 11th Dist. No. 2007-T-0085, 2008-Ohio-1896, ¶11.  In the committee comment to R.C. 2941.25, the drafters explained that "the basic thrust of the section is to prevent 'shotgun' convictions."

{¶ 12} R.C. 2941.25 provides:

{¶ 13} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 14} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 15} In the recent Ohio Supreme Court case, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the court thoroughly reviewed its "difficult *** jurisprudence on allied offenses" from 1971 to the present. See id. at ¶7 - 40. But most notably, in *Johnson*, the Supreme Court finally overruled *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, where it had held that courts should compare the statutory elements in the abstract. *Johnson* at paragraph one of the syllabus. The Supreme Court explained that *Rance* had ignored the mandates of R.C. 2941.25, "which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." *Johnson* at ¶46.

{¶ 16} In *Johnson*, the Supreme Court explained that "whether offenses are allied offenses of similar import under R.C. 2941.25(A) *** is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. *** If the offenses correspond to such a degree that the

conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." (Internal citations omitted.) Id. at ¶48.

{¶ 17} Then, "[i]f the multiple offenses *can be* committed by the same conduct, then the court must determine whether the offenses *were* committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" Id. at ¶49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶50 (Lanzinger, J., dissenting).

{¶ 18} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." Id. at ¶50.

{¶ 19} "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." Id. at ¶51.

Application of *Johnson*

{¶ 20} R.C. 2905.01(A)(1) sets forth the elements of kidnapping as: "[n]o person, by force, threat, or deception, *** by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person *** [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."

{¶ 21} Gross sexual imposition under R.C. 2907.05(A)(1) provides that "[n]o person shall have sexual contact with another *** when *** [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."

{¶ 22} There is no question that kidnapping and gross sexual imposition can be committed by the same conduct under the first prong set forth in *Johnson*. The state concedes as much. But the state maintains that the trial court correctly found that the kidnapping and gross sexual imposition offenses were committed with a separate animus because Moore first drove the victim to a secluded place, where he then committed the acts of gross sexual imposition, and restrained her liberty for an hour.

{¶ 23} The victim wrote a letter to the court, which was read into the record by a victim's representative. The victim explained that before the acts occurred, Moore had been driving her from his house in Cleveland Heights to her house in Garfield Heights. She stated, "[i]nstead of the freeway route we were going to take, we took back roads. At the stop sign he turned off the car and molested me. After about an hour, he drove me the rest of the way home."

{¶ 24} In the presentence investigation report ("PSI"), the offense summary contained in the Shaker Heights police report, states: "While driving [Jane Doe] home, Moore deviated from his usual route and began to take back roads. When they arrived at an intersection, later identified as the corner of South Park Road and Park Drive, Moore turned the car off and the

headlights." Moore then committed the acts of gross sexual imposition. Then, "Moore turned the car back on and proceeded to drive down Lee Road" to the victim's home in Garfield Heights.

{¶ 25} Over thirty years ago, the Ohio Supreme Court set forth a test to establish "whether kidnapping and another offense of the same or similar kind [were] committed with a separate animus as to each pursuant to R.C. 2941.25(B)." *State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, syllabus. The court held:

{¶ 26} "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

{¶ 27} "(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions." Id.

{¶ 28} In *Logan*, the Ohio Supreme Court explained:

{¶ 29} "We believe that prolonged restraint without asportation may be as penologically significant as substantial asportation and, under certain circumstances, will support a conviction for kidnapping as a separate act or animus from that of rape.

{¶ 30} "Secret confinement, such as in an abandoned building or nontrafficked area, without the showing of any substantial asportation, may, in a given instance, also signify a separate animus and support a conviction for kidnapping apart from the commission of an underlying offense.

{¶ 31} "The primary issue, however, is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense. In the instant case, the restraint and movement of the victim had no significance apart from facilitating the rape. The detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape. In such circumstances, we cannot say that appellant had a separate animus to commit kidnapping." Id. at 135.

{¶ 32} In *Logan*, the victim was accosted at the entrance to an alley and was forced down the alley, around a corner, and down a flight of stairs, where she was raped. She was then immediately released. Id. at 126-27. Under these circumstances, the Supreme Court of Ohio concluded that the detention and asportation were incidental and no separate animus existed. Id. at 136-37.

**{¶ 33}** Moore argues that there was no separate animus because he committed the acts while he was simply driving the victim to her house, as he had done many other times. He maintains, "[t]he normal and most direct way to the victim's home from Cleveland Heights to Garfield Heights does not involve the highway, or any major interstate. Anyone familiar with Cleveland Heights understands that it is landlocked from any highway access and side roads are the most convenient and only way of travel to get anywhere."

**{¶ 34}** While we agree with Moore that the interstate may not have been the most direct route to the victim's house, he still veered off of his route on Lee Road and into a park (according to the police report indicating that Moore stopped at the intersection of South Park Road and Park Drive), where he kept the victim for about an hour, to commit the acts of gross sexual imposition against her. Thus, we agree with the trial court that Moore's driving the victim to a secluded place was committed with a separate animus separate from the acts of gross sexual imposition.

**{¶ 35}** Accordingly, the trial court did not err, and Moore's first assignment of error is overruled.

<u>Maximum Prison Sentence</u>

**{¶ 36}** In his second assignment of error, Moore argues that the trial court erred when it sentenced him to the maximum prison term for kidnapping, five years, and for gross sexual imposition, 18 months, and ordered them to be served consecutively. He maintains that the trial court failed to consider any of the factors in R.C. 2929.12 and 2929.14. We disagree.

{¶ 37} Appellate courts must apply a two-step approach when reviewing a defendant's sentence. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶4. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." Id.

{¶ 38} In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the Ohio Supreme Court held that trial courts "have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶100. Indeed, *Foster* severed those sections of the Revised Code that required trial courts to make findings of fact before sentencing an offender to maximum or consecutive sentences. Id. at paragraphs one and three of the syllabus. The Supreme Court recently upheld *Foster* in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768.

{¶ 39} In *Kalish*, the Supreme Court explained that "[a]lthough *Foster* eliminated mandatory judicial fact-finding for upward departures from the minimum, it left intact R.C. 2929.11 and 2929.12. The trial court must still consider these statutes." Id. at ¶13, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶38.

{¶ 40} R.C. 2929.11 and 2929.12 "are not fact-finding statutes." *Kalish* at ¶17. "Instead, they serve as an overarching guide for trial judges to consider in fashioning an appropriate sentence. In considering these statutes in light of *Foster*, the trial court has full discretion to determine whether the sentence satisfies the overriding purpose of Ohio's sentencing structure. Moreover, R.C. 2929.12 explicitly permits a trial court to exercise its discretion in considering whether its sentence complies with the purposes of sentencing." Id. "Therefore, assuming the trial court has complied with the applicable rules and statutes, the exercise of its discretion in selecting a sentence within the permissible statutory range is subject to review for abuse of discretion pursuant to *Foster*." Id.

{¶ 41} In *Kalish*, the Supreme Court also made clear that even after *Foster*, "where the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes." Id. at fn. 4, citing *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus.

{¶ 42} R.C. 2929.11(A) provides that when a trial court sentences an offender for a felony conviction it must be guided by the "overriding purposes of felony sentencing." Those purposes are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(B) states that a felony sentence "must be reasonably calculated to achieve the purposes set forth under R.C. 2929.11(A), commensurate with and not demeaning to the seriousness of the crime and its impact on the victim, and consistent with

sentences imposed for similar crimes committed by similar offenders." And R.C. 2929.12 sets forth factors concerning the seriousness of the offense and recidivism factors.

{¶ 43} After reviewing the record in this case, we find that it supports the inference that the trial court properly considered the factors in R.C. 2929.12 and adhered to the purposes and principles of sentencing set forth in R.C. 2929.11.

{¶ 44} At the sentencing hearing, the trial court stated that it considered the documents provided by defense counsel, establishing that Moore has enrolled himself in counseling, Moore's military records and commendations, as well as records from Recovery Resources, and other letters of support on behalf of Moore. But the trial court further indicated that it listened to the victim and the victim's mother, who both told a "different side of the story." The victim and the victim's mother informed the court of the difficulties the victim has had since the acts occurred, as well as the difficulty it has had on the entire family. The court further explained that just because Moore had a minimal "past criminal history," the court could "not get around the nature of the seriousness of the conduct." The court also stated that although Moore was admitting his "mistake," it appeared that some of the people who wrote letters on behalf of Moore were blaming the victim, claiming that the acts were "not as big a deal as everybody [was] making it."

{¶ 45} We find, based on the record before us, that the trial court carefully considered the factors in R.C. 2929.11 and 2929.12 when sentencing Moore.

**{¶ 46}** Accordingly, Moore's second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
EILEEN A. GALLAGHER, J., CONCUR